BUCHALTER
A Professional Corporation
ZAVEN A. SARGSIAN (SBN: 347900)
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
Email: zsargsian@buchalter.com

*Attorneys for Plaintiff Seda Grigoryan*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEDA GRIGORYAN,<br><br>Plaintiff,<br><br>vs.<br><br>NO FRONTIERS PRODUCTION, LLC,<br><br>Defendant. | Case No. 2:25-CV-00552-SRM-SKx<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NO FRONTIERS PRODUCTION, LLC**<br><br>Date: August 27, 2025<br>Time: 1:30 PM<br>Judge: Serena R. Murillo |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2025, at 1:30 PM PST, in Courtroom 5D of the courthouse, located at 350 W. First Street, Los Angeles, CA 90012, Plaintiff Seda Grigoryan will, and hereby does, move for default judgment against Defendant No Frontiers Production, LLC ("Defendant" or "NFP").

This motion is made pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1. Grigoryan moves for a default judgment (i) rescinding and declaring void the Production Services Agreement, and (ii) declaring that she is the sole and exclusive owner of and retains all her rights, including under copyright, to

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BN 91845802v1

the videos she created under the Agreement, a copy of which has been provided to the Court along with her declaration. A proposed default judgment has been filed concurrently with her Motion.

<u>A conference of counsel pursuant to L.R. 7-3 did **not** take place because Plaintiff is unable to serve Defendant and Defendant has not appeared.</u> The Clerk of the Court entered default certificate on June 24, 2025. (ECF No. 33.)

DATED: July 24, 2025

BUCHALTER
A Professional Corporation

By: /s/Zaven A. Sargsian
ZAVEN A. SARGSIAN
Attorneys for Plaintiff

2

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BUCHALTER
A Professional Corporation
Salt Lake City

BN 91845802v1

## SUMMARY

Ms. Grigoryan requests default judgment against Defendant. As explained below, when deciding whether to grant default judgment, the Court applies the *Eitel* factors. Here, because six of the seven *Eitel* factors weigh in favor of granting Grigoryan default judgment, Grigoryan is entitled to default judgment on her claim for fraudulent inducement and rescission under California Civil Code section 1689(b). In addition, while Plaintiff's actions have significantly harmed Grigoryan, in lieu of retaining an expert witness to provide a technical analysis of the total damages she has suffered, Grigoryan requests the Court simply grant her $2,210.50 in costs as the prevailing part, and an order (i) rescinding and declaring void the Production Services Agreement (which was procured through fraud); and (ii) declaring that she is the sole and exclusive owner of and retains all her rights, including under copyright, to the videos she created under the Agreement.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter a default judgment." *T-Cetra, LLC v. Guzman*, CV 16-6416 DSF (AFMx), 2017 WL 7156250, at *1 (C.D. Cal. Dec. 15, 2017). Under Local Rule 55-1, when applying to the Court for a default judgment, "the application shall be accompanied by a declaration in compliance with F.R.Civ.P. 55(b)(1) and/or (2) and include" sub-paragraphs (a)-(e)." "Whether to enter a default judgment is within the sound discretion of the district court." *U.S. C.F.T.C. v. Capitol Equity FX LLC, et al.*, Case No. EDCV 17-743 JGB (SKx), 2017 WL 9565340, at *2 (C.D. Cal. July 31, 2017) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980)). "In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BN 91845802v1

concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

(the "*Eitel* Factors"). "Upon entry of default, the well-pleaded factual allegations of the complaint are deemed true; however, allegations pertaining to the amount of damages must be proven." *Capitol Equity FX*, 2017 WL 9565340 at *2; *see also T-Cetra*, 2017 WL 7156250, at *1 ("On entry of a default, well-pled allegations in the complaint regarding liability are generally deemed true."). "Allegations as to damages, however, must be proven." *Id.*

## ARGUMENT

In this case, Plaintiff has alleged two causes of action for rescission and fraudulent inducement, and in each case, requested an order and judgment rescinding the Production Services Agreement. (ECF No. 2.)

### A. Procedural Requirements

Here, Plaintiff has satisfied the initial procedural requirement for entry of default judgment by obtaining a default certificate. On June 23, 2025, pursuant to Federal Rule of Civil Procedure 55(a), Plaintiff petitioned for entry of default certificate by the Clerk of Court. (ECF No. 32.) As part of Plaintiff's request, Plaintiff set forth information required by Local Rule 55-1(a)-(e). (*Id.*) On June 24, 2025, the Clerk of Court entered default certificate against Defendant. (ECF No. 33.) The same day, the Court directed Plaintiff to file a motion for default judgment on or before July 24, 2025. (ECF No. 34.)

### B. The *Eitel* Factors all weigh in favor of the Court granting default judgment rescinding the Production Services Agreement.

1. Possibility of Prejudice to Plaintiff

The first factor weighs in favor of Plaintiff. "The first factor considers whether the plaintiff will suffer prejudice, such as being left without a legal remedy, if the Court declines to enter default judgment." *Dick v. Corman*, Case No. 21-cv-

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**
BN 91845802v1

Case No. 2:25-cv-00552

07169-JSC, 2022 WL 2981822, at *2 (N.D. Cal. July 28, 2022). Here, Defendant did not respond to Plaintiff's complaint. As a result, Plaintiff's only recourse is default judgment. Thus, the first factor weighs in favor of default judgment.

2. <u>Merits of Substantive Claims & Sufficiency of the Complaint.</u>

The second and third factors weigh in favor of granting Plaintiff default judgment. Under the *Eitel* Factors, "the merits of Plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). "These two factors require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'" *Id.* (modification in original). Moreover "[a]fter entry of default, the factual allegations in the complaint related to liability are accepted as true and deemed admitted." *Corman*, 2022 WL 2981822, at *2. "The district court is not required to make detailed findings of fact." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

In this case, Plaintiff has alleged two causes of action for (i) rescission and (ii) fraudulent inducement, and in each case, requested an order and judgment rescinding the Production Services Agreement. (ECF No. 2.) Plaintiff's two causes of action both rely on fraud. Under California Civil Code section 1689(b), "[a] party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was . . . obtained through . . . fraud . . . ." The elements of fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 275 (Cal. 2004)

Similarly, "[t]o prove a claim of fraudulent inducement, a plaintiff must show (a) a misrepresentation, (b) knowledge of falsity; (c) intent to defraud or to

5

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

BN 91845802v1

induce plaintiff to enter into a contract; (d) justifiable reliance; and (e) resulting damage." *Edwards v. FCA US LLC*, Case No. 22-cv-01871-WHO, 2022 WL 1814144, at *2 (N.D. Cal. June 2, 2022). "Fraud in the inducement . . . occurs when the promisor knows what he is signing but his consent is induced by fraud." *Id.* "When a plaintiff's consent was induced by fraud, the contract is voidable and can be rescinded by the plaintiff to avoid her obligation." *Id.*; *see also Cantran Grp., Inc. v. Cups, LLC*, Case No. 2:18-cv-02044-SVW-RAO, 2020 WL 4873564, at *3 (C.D. Cal. July 1, 2020) (quoting Cal. Civ. Code § 1689(b)(1)) ("In California, a contract may be voided if it was 'obtained through duress, menace, fraud, or undue influence'"). "California has a statutory public policy interest in avoiding contracts that were fraudulently induced." *Cantran Grp.*, 2020 WL 4873564, at *3. "In addition, 'California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.'" *Robinson Helicopter*, 102 P.3d at 274.

  Here, Plaintiff has sufficiently alleged her two causes of action, both of which are merited. Specifically, there is significant evidence of fraud. Ms. Grigoryan is a documentary filmmaker that has worked as a filmmaker and videographer with several reputable media organizations. (Compl. at ¶ 10.) On or about October 25, 2023, Ms. Grigoryan registered for a profile with www.WorldFixer.com ("WorldFixer"), which is a well-known platform where media companies can connect with production professionals located around the world. (*Id.* at ¶ 12.) On November 26, 2023, Ms. Grigoryan received a message from a WorldFixer user named Alex Gil. (*Id.* at ¶ 14.) Gil is a representative of Defendant NFP, and introduced himself as a "production manager . . . ." (*Id.* at ¶¶ 15-16.)

  NFP made multiple misrepresentations to Grigoryan. NFP, through Gil, represented to Ms. Grigoryan on multiple occasions that NFP was working on "a

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

BN 91845802v1

Case No. 2:25-cv-00552

pilot about World's mysterious and lost civilizations for History Channel. One of them is Urartu." (*Id.* at ¶ 16.) NFP claimed that it "need[ed] to shoot two interviews with Armenian historians and archeologists," and asked Ms. Grigoryan whether she "[w]ould . . . be interested in working with us? With best regards, Alex." (*Id.*) On its face, Urartu has nothing to do with politics—it is an Iron Age kingdom, located throughout several countries, with archeological sites in Armenia, where Ms. Grigoryan is located. (*Id.* at ¶¶ 17-18.) One such location, is the Erebuni Fortress.[1] Because Ms. Grigoryan has focused her work in the field of cultural heritage protection, she was well suited for the proposed project and interested in NFP's work. (*Id.* at ¶ 19.) Over the next few days, NFP (through Gil) again represented to Ms. Grigoryan that "[t]he pilot episode will consist of three World's famous sites – Yerevan (Urartu Kingdom), Jericho (Palestine/Israel) and Tashkent/Bukhara (Uzbekistan) . . . ." (*Id.* at ¶ 20.) On or about November 27, 2023, NFP sent Grigoryan a Production Services Agreement. (*Id.* at ¶ 26.) The Agreement made the same false representations that NFP previously made, including that Ms. Grigoryan would "render production services for Producer [defined as NFP] on Producer's documentary series' pilot with working title 'Unearthing the Mystery' (the 'Program') in Armenia (the 'Site'), with services commencing on or about November 28, 2023 and terminating on or about December 6, 2023." (*Id.* at ¶ 27.) A copy of the Agreement is attached to Grigoryan's declaration. (Declaration of Seda Grigoryan ("Grigoryan Decl.") at ¶ 3, attached hereto as **Exhibit A**.)

Ms. Grigoryan justifiably relied on NFP's representations. NFP's communications with Grigoryan, and its request to Grigoryan, were made through a well-known website for freelancer videographers and journalists. (*Id.* at ¶ 12.) Nothing about NFP's request to film a historical site was overtly political or controversial. (*Id.* at ¶¶ 23-24.) And NFP repeated its false representations that the

---

[1] *Erebuni Fortress*, Wikipedia (last visited July 22, 2025), https://en.wikipedia.org/wiki/Erebuni_Fortress.

work was for a History Channel pilot numerous times, including by inserting the false representation into a "Production Services Agreement," which appears to be professionally prepared. (*Id.* at ¶¶ 16, 20, 27.) Relying on NFP's express representations, including in the Agreement, on December 2 and 3, 2023, Ms. Grigoryan filmed her interviews with the director of the Erebuni museum, Dr. Miqayel Badalyan, and the deputy director, Vahe Sargsyan. (*Id.* at ¶¶ 21-22, 32-33.) Grigoryan also filmed parts of the Erebuni Fortress and related sites, as well as areas of the city. (*Id.* at ¶ 33.) A complete copy of the video footage created by Ms. Grigoryan has been provided to the Court (*See* Grigoryan Decl. at ¶ 4).

On or about December 3, 2023, Grigoryan sent her work to NFP. (*Id.* at ¶ 35.) And on December 5, 2023, NFP informed Grigoryan that NFP was very happy with Grigoryan's work, that NFP was working on the pilot and would likely finish editing it by mid-January 2024. (*Id.* at ¶ 36.) Less than a month later, on or about January 3, 2024, Grigoryan discovered that her work, including the interviews she conducted and filmed of the directors of the museum, were used as a political propaganda piece to spread inter-ethnic hatred. (*Id.* at ¶¶ 37-39.)

Based on the above, there is significant evidence that NFP had knowledge of falsity and an intent to induce Grigoryan to enter into the contract. First, NFP's representations (which it made on several occasions) were very specific, i.e., NFP expressly claimed Grigoryan's artistic work would be used for a History Channel pilot program. (*Id.* at ¶¶ 16, 20, 27.) Indeed, the Agreement itself NFP provided to Grigoryan expressly mentions that Grigoryan's work would be used for a pilot program for the History Channel. (*Id.* at ¶ 27.) NFP even gave the alleged pilot a name: "Unearthing the Mystery." (*Id.*) There is no way to confuse a History Channel pilot program with a propaganda piece published on YouTube that is intended to sow hatred. Second, it was less than a month between when Ms. Grigoryan sent NFP her work and when the propaganda pieces started appearing

8

Buchalter
A Professional Corporation
Salt Lake City

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BN 91845802v1

(and spreading) on YouTube. (*Id.* at ¶¶ 36, 37, 41.) Third, by failing to respond to the Complaint, NFP has admitted it knew its representations were false when it made them. *(Id.* at ¶ 54.) Yet, NFP concealed the true fact and made misrepresentations to Grigoryan to induce her to enter into the Agreement and provide work product that NFP intended to use for propaganda. (*Id.* at ¶ 55.)

Finally, Grigoryan's justifiable reliance on NFP's false representations resulted in damage to her. As an initial matter, as a result of NFP's lies, Grigoryan entered into the Agreement and gave away her copyrights to her artistic work. Section 5 of the Agreement purported to transfer all of Ms. Grigoryan's rights to the work to NFP. Specifically, Ms. Grigoryan agreed that her services would "constitute 'works-made-for-hire' for [NFP], specially ordered or commissioned for use as part of a motion picture or other audio visual work, and shall be for all purposes [NFP's] sole and exclusive property (the Program and all of said elements and results and proceeds being hereinafter collectively referred to as the 'Proceeds')." The same section 5 also provides that Ms. Grigoryan:

> [G]rants [NFP] without reservation, condition or limitation, all rights of every kind and nature in and to all ideas relating to the Program, to the Proceeds and each element thereof . . . including without limitation the following: . . . any and all rights of copyright and extension and renewal of copyright therein, perpetually, in any an all languages, throughout the Universe, in any and all media whether now known or hereafter devised; and the unlimited and absolute right, in [NFP's] sole discretion, to edit, add to, subtract from and otherwise modify the Proceeds or any element thereof and to combine the Proceeds or any element thereof with material furnished or created by others . . . .

And Ms. Grigoryan agreed to waive her *droit* moral or moral rights of authors in her artistic work. (*Id.*) Grigoryan would never have agreed to the foregoing (or entered into the Agreement) had she known NFP's true intentions. (Compl. at ¶ 47, 64.)

In addition, Grigoryan was damaged because her artistic work and creative

9

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**
BN 91845802v1

Case No. 2:25-cv-00552

expression was used in a way that Grigoryan never intended (and never would have agreed to). (*Id.* at ¶ 47.) Grigoryan focuses her work in the area of cultural heritage protection, not political commentary or political propaganda. (*Id.* at ¶¶ 1, 19.) Also, as a result of NFP's false representations, Grigoryan's reputation was harmed and she was subjected to unwanted attention from governmental authorities, and negative comments and accusations were directed towards her by members of the public. (*Id.* at ¶ 47.) As the propaganda piece began circulating, local news discussed it continually and identified Grigoryan as being part of the propaganda piece. (*Id.* at ¶ 45.)

In short, under both California Civil Code section 1689(b) and California's law for fraudulent inducement, there is significant evidence that NFP committed fraud against Grigoryan. Thus, the second and third *Eitel* Factors weigh in favor of granting Plaintiff default judgment.

    3.  <u>Money at Stake</u>

The fourth *Eitel* Factor weighs in favor of default judgment. "Under the fourth *Eitel* factor, 'the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.'" *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1050. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Tech. LED Intel. Prop., LLC v. Revogi, LLC*, Case No. 18-cv-0387-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019). Here, while Plaintiff's damages are likely reasonable, they require a technical analysis because they relate to the reputational damage she has suffered as a result of Defendant's fraud. As a result, Plaintiff has opted to seek an order rescinding and declaring void the Production Services Agreement—which is the product of that fraud—and costs. Plaintiff has opted to avoid the cost of an expert analysis to prove the full damages she has suffered. In short, the fourth *Eitel* factor weighs heavily in favor of granting default judgment because Plaintiff is not

10

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

BN 91845802v1

seeking money damages as part of her judgment.

    4. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* Factor also weighs in favor default judgment. "The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1051. Here, there is no indication that the material facts are in dispute. The well-pleaded allegations in the complaint as to liability are deemed admitted. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Here, Plaintiff filed a well-pled complaint alleging the facts necessary to establish fraud, and the court clerk has entered default against Defendant. Those facts, in part, allege that Defendant specifically and expressly (on several occasions) told Plaintiff her artistic work would be used for one purpose, but then Plaintiff's work was used for an entirely different (improper) purpose. It is unclear what dispute there could be in case involving such a clear fraudulent inducement.

    5. Excusable Neglect

The sixth *Eitel* factor favors default judgment "where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit.'" *Corman*, 2022 WL 2981822, at *4. Here, Plaintiff properly served Defendant. On January 22, 2025, Grigoryan filed the Complaint. (ECF No. 2.) Grigoryan, through counsel, then retained First Legal to attempt to serve complaint and summons on NFP, including at the address provided by NFP in the Agreement. (Decl. of Zaven A. Sargsian in Supp. Of Plf's Mot. for Sub. Serv. Of Process (ECF No. 14-1) at ¶ 18.) According to First Legal's affidavit, it attempted to serve NFP on January 31, 2025 without any success. (*Id.* at ¶ 10.) As a result, Grigoryan filed a Motion for Substitute Service of Process (ECF No. 25), which the Court granted (ECF No. 27). Pursuant to the Court's Order, Grigoryan served NFP. (*See* Decl. of

11

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BN 91845802v1

Zaven A. Sargsian Re Compliance with Court's Ord. Granting Plf's Mot. for Sub. Serv. Of Process Pursuant to Cal. Code of Civ. P. § 415.50(a) (ECF No. 31).) Thus, Grigoryan has properly served NFP.

### 6. Strong Policy Favoring Decisions on the Merits

The Court's "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible.'" *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). "The seventh Eitel factor, by definition, weighs against entering default judgment." *Corman*, 2022 WL 2981822, at *4. But, the Defendant's failure to answer Plaintiff's complaint makes a decision on the merits in this case impractical, of not impossible. This in turn makes default judgment appropriate despite the policy against it.

In total, six of the seven *Eitel* Factors weigh in favor of the Court granting default judgment.

### C. The Court should grant an order rescinding the Agreement and declaring that Grigoryan retains all her rights to her work.

Grigoryan has filed a proposed judgment concurrently with this Motion. Given that the object of NFP's fraudulent inducement was to obtain the videos created by Grigoryan (*see* Compl.), and the fact that numerous YouTube videos have been published to date containing Grigoryan's work (*id.* at ¶¶ 39-41), there is a significant risk that further portions of Grigoryan's work will be used without her permission. Grigoryan has therefore provided a copies of the video content to the Court, as well as a sworn declaration attesting that the videos contained in the copy are those she created and provided to NFP. (Grigoryan Decl. at ¶ 4.) Grigoryan requests the Court indicate in the judgment that Grigoryan retains all her copyrights to the work contained in the video.

12

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

BUCHALTER
A PROFESSIONAL CORPORATION
SALT LAKE CITY

Case No. 2:25-cv-00552

BN 91845802v1

**D. The Court should award Plaintiff her costs.**

Finally, the Court should also award Plaintiff her costs. Under Federal Rule of Civil Procedure 54(d), "costs—other than attorney's fees—should be allowed to the prevailing party." Here, Grigoryan has incurred $2,210.50 in costs, which is a $405.00 filing fee, $55.50 to the process server, and $1,750.00 paid to the Los Angeles Times to publish notice of the summons (as ordered by the Court (ECF No. 27)). Grigoryan's counsel has provided a declaration detailing these costs. (See Declaration of Zaven A. Sargsian Re Court Costs, attached hereto as **Exhibit B**.

## CONCLUSION

Based on the *Eitel* Factors, the Court should grant Grigoryan's Motion and enter default judgment (i) rescinding the Production Services Agreement, (ii) declaring that she is the sole and exclusive owner of and retains all her rights, including under copyright, to the videos she created under the Agreement, and (iii) granting Grigoryan $2,210.50 in costs.

DATED: July 24, 2025

BUCHALTER
A Professional Corporation

By: /s/Zaven A. Sargsian
ZAVEN A. SARGSIAN
Attorneys for Plaintiff

13

**Motion for Default Judgment Against Defendant No Frontiers Production, LLC**

Case No. 2:25-cv-00552

BUCHALTER
A Professional Corporation
Salt Lake City

BN 91845802v1